Case No. 21-1249 International Organization of Masters, Mates & Pilots ILA-AFL-CIO Petitioner v. National Labor Relations Board Ms. Dani Dukic for the petitioner, Ms. Isabel for the respondent, Ms. Cooper for the intervention Good morning. Good morning, Your Honor. Lisa Dominovich of Busch Gottlieb on behalf of the International Organization of Masters, Mates & Pilots. May it please the Court. There's three points in which I wish to make that are in the brief but I think can be highlighted further. The first is that the 1981 agreement is a foundational document of collective bargaining agreements in the offshore contracts of Masters, Mates & Pilots. It was negotiated as a master within a multi-employer association. That association has since disbanded and the negotiations occur with each company individually. But it still is foundational for multiple contracts, meaning that the language that was relied on here is in many other contracts. But that to change it or correct it couldn't be done at just one negotiations table because it is now broken away from multi-employer negotiations. And so this decision isn't just applicable to the company here, Sunrise Asia, but actually impacts many of the offshore agreements that Masters, Mates & Pilots has because they also have that 1981 underlying document as part of its contract. And so this ruling, therefore, really destabilizes relationships with other employers. Because if the union has a really expensive grievance that you don't want to arbitrate, simply refuse to arbitrate, and if Masters, Mates & Pilots goes to the National Labor Relations Board, even if they can show that, in fact, there are statutory employees in that unit citing this case, they don't have to rule on it. They can just say they don't have jurisdiction. And so it's a very important decision to the union to not have bans because of that basically free pass for any offending employer. And it's not just Masters, Mates & Pilots. There are other maritime unions that have officers, and this is destabilizing for those maritime unions. And in the entertainment industry and construction industry where you have multi-employer association negotiations and leads or professionals with skills that have to direct other workers, this has application in all of those places. And I think that the amicus brief does a nice job of diving into that. The second point is that the second and third mates come onto the ship through a hiring call. So they are not selected by the employer. They don't interview them or get to choose who they pick. They come on because they have a defined set of skills and meet requirements and then are dispatched through the union hiring hall. And they're only on there for 120 days or maybe even less if they're replacing someone who is sick on board. So this isn't the type of aligned supervisor picked by the company. It is someone who has the skill set that comes on and off various companies throughout the course of their career. It really goes to the professional nature of the positions, not that they are supervisors that are more aligned with a company than the union. Mr. Medovich, are you arguing that the board's ruling is novel and unsupported or that it squarely conflicts with prior board precedent? And if it's a square conflict, I take you to be relying principally on Arizona Electric. But in Arizona Electric, there was a stipulate that there was a supervisor. Whereas it seems to me the clearer potential conflict would be Gratiot. I just want to sort of test out the precision of your position. Is it a conflict? Is it just new? If it's just new, is the burden to justify as weighty on the board? It's hard to say, in all honesty, because there isn't a case that's squarely on point. Here we were midterm in the contract. The contract did not and does not expire until 2027. So in 2015, when they involuntarily assumed the collective bargaining agreement, they assumed agreement in place until 2027. And so in Union Plaza and I believe also in Arizona Electric, there was talk about, well, at the end of the contract, it may look different than during the term of the contract. But here we have a situation where there is not a stipulation as to supervisory status. We were in the mid-contract term. So I'm not sure that there – and there has never been a case that has said that the board lacks jurisdiction to enforce a contract midterm that isn't all supervisory. I thought your argument was the board walked away from existing precedent with no justification for what it would have done. And indeed, the board decided suddenly it wasn't presented to the ALJ. This went off – well, that's what Judge Pillard is asking. What's your presentation here? In an agency case, I thought you were going after them, as parties frequently do with an agency, when the agency decision makes no sense. And I thought you were saying it makes no sense, one, because the record doesn't support it. Indeed, the record goes just the opposite way. There can't be a fight over whether they were or were not supervised. The ALJ decided that, and the board did not dispute it. The record's clear on who was and was not supervisors. And I thought your argument was, look, Your Honors, how can they reach this decision? This is a unit that is recognizable. They're charged with knowledge of the people who were in the unit. And there's never been a case that I can find anywhere, ever, which says we look to see what the employer thought. There's no case. Now, I'll hear from the other side. Maybe they found one between the time I prepared and today. There's no case. But the point I'm making is I thought that was your argument. That is. I don't much care about the history. I understand the history. I didn't think that was the point of the case. We understand all the bargaining history. The point of this case is there was an existing lawful bargaining unit. And the only fight before the ALJ was whether there were some non-supervising people in it. That's all the parties thought was an issue. Sunrise didn't argue anything. The whole fight was supervisors or not. The ALJ said there are some employees here. And the board did not overturn that finding. Correct. Well, in that kind of a unit, the board is supposed to recognize it, right? Isn't that the law? Yes. Well, then there is established law. And the board walked away from it with no explanation, right? That's right. Okay. Is that your position? That is our position. Okay. All right. And I'm specifically confused by your saying that there's no direct conflict. Because it would seem to me that there's quite a direct conflict, at least with Gratiot, where if the board in Gratiot had begun with the threshold inquiry that the board began with here, whether the employer understood the unit to be mixed, it would have concluded that it lacked jurisdiction to enforce. Because in that case, the collective bargaining agreement itself said that it excluded supervisors within the meaning of the act. And so the understanding as here where the board points to the agreement and says it describes people as supervisors, there the agreement described the people as only employees. So I'm just not sure why you aren't relying more squarely on what, at least on its face, would seem to be a direct conflict with the prior board. I thought you just explained in answer to me that that's what you were meaning to say. This is inconsistent with established law, no? I guess where I'm getting a little confused, but in agreement with what you're saying is that, yes, our contention is that the decision is squarely contrary to established board law, period. And in many ways, not just in one way. In many ways is it squarely in conflict. One way is that no doubt if you have a mixed unit and you're mid-contract, the board has jurisdiction to, say, follow the contract. That's established. The second established principle that seems to not have been followed here is that you can't rely on titles and paper authority. It matters what they do in fact. That's what the ALJ followed and the board decided not to even address. And board law is you're presumed to know who's in your unit, no matter what the contract says. You can't change the fact of supervisor versus employee by pointing to the contract, which is the fabrication, arguably, and make it so. The board law is clear on that. It doesn't matter that the contract appears to suggest that everybody here is a supervisor when in fact everybody is not a supervisor. That's law. That's not just a great argument for you. That's the board law. That's correct. And also the law is that this court does not have to defer to the board's interpretation of the collective bargaining agreement and that the collective bargaining agreement, when it's referring to supervisor, isn't referring to supervisor in a 211 sense of the act, but it's talking about jurisdiction between different units. The licensed tech officers are not the only officers on these ships. There's also engineering officers. So when you're saying supervising haul maintenance, supervising cargo, you're talking about that's the licensed tech officer versus the engine room, which is the engineer officer's turf. It's referring to a different aspect. It's not thinking in narrow terms of the National Labor Relations Act. It's thinking in terms of we've got these different officers who are highly skilled and have a lot of education and have a lot of pride in what they do on very close quarters together for 120 days out in the middle of the ocean. Let's say who's in charge of what and regulate that. And that's what haul maintenance and cargo supervision is referring to. And for the board to interpret on their own that in their framework of a 211 supervisory status, isn't consistent with what the parties understood back in 1981. But to your point, too, the board has always looked at what are people doing now. Right. Well, that's what I'm saying. You know, again, I hear what you're saying about the reality, but the fact is you have an ALJ finding that the board doesn't dispute and a party can't walk away. Under existing law, not just a good argument, a party can't walk away from the reality of the status of the employees who are in the unit. The ALJ said certain of these people are not supervisors. The employer can't walk away from that by saying that's not what I ever understood. Now, in this record, did the employer ever, during this 40-year period, did the employer ever voice that as an argument? Well, so there's been many different employers for these four years. Well, any of them. But certainly not in the record. Well, but that's a point to make. There's nothing in the record that says that the employer ever raised any argument up until this point. And, indeed, before the ALJ didn't make this argument. Correct. Right? Correct. And they have the burden of proof to do so. And they didn't even raise any kind of challenge about being supervisors until three years into the time after they had acquired the unit. So they voluntarily assumed the contract. They go to arbitration on two other cases. Then, after going into negotiations, so there is a re-opener in the contract where you can cover any topic except for the term of the agreement, which ends in 2027, and the defined benefit pension. But anything else is fair game. They don't change the arbitration provision in those negotiations. And then two months later, all of a sudden, they say, we're not going to go to Lintingham Heights, Maryland, anymore for arbitrations. They're on the West Coast. I don't want to make the flight. And so I'm going to stop letting anything go to arbitration. And so, therefore, they stop, and we have to go to the board to enforce this 1984 part of the contract that says that the arbitrations happen in Maryland. But the point is that that wasn't raised, and then the defense was only that the supervisors, in fact, they are, in fact, supervisors, which was litigated at the hearing, was their defense to three years into, after voluntarily assuming the agreement, to why they didn't have to go to Maryland. Now, I take it the board's position on that is that the employer could have thought, I'm recognizing the union, I'm negotiating with the union, but not in any kind of board enforceable sense, just informally. And is that implausible? On what ground? Well, so one thing is that the board decision didn't say that. The board decision says that both sides have this understood intent that they're. So both sides maybe thought we're just doing this because it's a convenient way to negotiate as private parties. It's our custom. We actually haven't resorted to the board because it's not. That's not the kind of bargaining we're doing. So what sort of. Right. So the problem with the board saying that is that that's not supported by the record. The record shows, in fact, there are 50 unfair labor practice charges filed over the course of the current general counsel's 20 years, representing the units in the record that there were multiple charges. And, you know, it wasn't even in dispute that the MMP has gone to the National Labor Relations Board to seek enforcement of of this agreement. Again, we have the same underlying agreement now represent to the court. This is not in the record, but in 2014 and another case against Matson, which is as the same blue book, the 1981 Agreement Foundation. Well, document said we strenuously contest the concept that Matson, chief mate, second mate and third mate are statutory supervisors. So, you know, this idea that they haven't utilized the board and that they have somehow have this understanding that their statutory supervisors is simply not true. There's not record support for it. In fact, the record goes the other way to suggest that the union is going in filing charges and not to section in the board. Order what does they quote Section 21 of the 1981 CBA duties of officer states the parties agree that the duties of the licensed officers, including masters, shall be maintained as supervisory and professional. Now, they don't put that in the order. They don't discuss it. What's your interpretation of that provision of the CBA? The interpretation, again, is is more in the sense of responsibility and consistent with maritime law. There's similar language in maritime understanding of the nature of the role of directing the ship. But since 1981 and in this record, there's evidence that, in fact, because of the constant technological communication with shoreside, that the regulations and international conventions require a designated person ashore in constant contact with that designated person ashore, that those kind of 211 supervisory duties have moved ashore. And in fact, in the record, there's an example of the captain wanting to terminate a chief mate and shoreside management saying, no, you can't terminate that chief mate. So back in 81, what even if even if and we will not concede that that means 211 supervisory, but even if it meant in 1981 supervisory consistent with the act, it doesn't mean that you're forever and always bound by that statement. Then when there's technological changes, industry changes, the crew sizes have gone down. And there's many cases, including Briscoe, Tyga and others of this. Well, my question really was having put it out in their order. There is no discussion of of what it means by the word. OK, that's one to be an internally inconsistent part of the board's order. Also. For the very end, it throws out. This is the respondent seeks to continue the party's bargaining relationship as it has existed for 40 plus years. Outside the board's jurisdiction, as is common in maritime industry, labor relations. Now, didn't you just say that there have been over 50 U.S. that the board has considered? Did I misunderstand you? Well, that doesn't mean that they have gone up to board decisions. So there's been. So is the board wrong when it says for 40 years, these two parties have been operating outside the board's jurisdiction? Yes, the board is wrong with that. And two, there's certainly no record support. And if it had been framed that way at the ALJ level, we could have put in more evidence. I can tell you there's been eight cases under that have the 1981 agreement as a foundational document that were filed by masters, mates and pilots between 2009 and 2021. And in none of those cases was supervisory status conceded. OK, are there any more questions? We'll give you a couple of minutes to reply. Thank you. This is Bill. One. Please support Kelly as well here on behalf of the National Labor Relations Act. The board's decision here is limited. It's simply found that it doesn't have jurisdiction to act in this particular case because of the unusual circumstances. I mean, that's an interesting approach. And if I were in your shoes, I'm not sure how I was going to ask you kiddingly. Was there a lottery drawn and you got stuck with this case? Because I'd be very honest with you, since I'm one of the judges here and one of the three people you have to address, in my view. The majority decision is a paradigm of an agency decision that is devoid of reason decision for a lot of reasons. It walks away from existing board law. Recognizing mixed units is longstanding and perfectly appropriate. And the board can't walk away from it. Not it walks. It creates new law that is board looking at what it perceives to be the understanding of the employer or the employer and the union, as opposed to the facts in the case. It doesn't address the ALJ critical findings. It addresses a case that wasn't presented to the ALJ. And I go on and on. The dissent in this case is exactly right. The dissent was scratching his head like in disbelief because I was in disbelief. This case makes no sense in terms of how we are supposed to look for reasoned decision making from an agency. And that's why we'll ask you where you must have died when you got this assignment. And you're smiling nicely and that's polite. But this case makes no sense. How can we deny the petition when there's no reason decision making here? I will say that the board applies its mixed unit decisions to this unusual fact. You're right. There are not very many mixed unit cases begin with, and there are. Maybe no cases that come to the board in this particular class. But the board looked at objective indicia, the party's understanding. No, they do. What's the objective addition? The 40 year bargaining, the 40 year bargaining history. Right. The language in the contract, which does not establish or does not saying the language in the contract established. Well, you and you anticipated my question. That's not conclusive. OK, the language. Absolutely not conclusive. And the board would agree. And the case law is, as you understand, whether it's there are only a few cases or not. The case law is undisputed that the parties are bound by. They're assumed to understand or they're assumed to accept the reality of who's in the unit. They can't after the fact say, oh, we didn't really understand that way. A case law from the board is, look, if you sign into that mixed unit, you are presumed to understand who's in it. And the way we measure who's in it is by an objective standard like the ALJ did. Good point. One, both parties are being held to their collective bargaining. So this is midterm. This is not in the term. This is not in our case, their representation petition where the parties are trying to decide who's in the unit. This is midterm contract. Right. The board does not disturb a contract. And the units go who's in the unit, who's out in the middle of it. But the decision does just that. It refuses jurisdiction. It refuses jurisdiction because the board is holding both parties to the contract, which says these employees, these workers will be treated as supervisory. It doesn't say that. It doesn't say that. It certainly doesn't refer to supervisory in the statutory sense. No, it absolutely does not. And it's not conclusive. You started off by acknowledging that that's not conclusive. The board made no finding about whether or not these workers are in fact allowed to supervise. In fact, it thought that was irrelevant, which is stunning because even if the board adheres to its understanding test, surely it is relevant to whether an employer has a reasonable understanding what the employees actually do and what they're found to do. If the employer has any idea about its own workforce, then the plausibility or reasonableness of the claimed understanding would be affected by the finding about the workers. And the board does not treat it as a completely irrelevant. How could that be? Is in the board's view. Based on those objective indicia I mentioned, including the union's own statements to the board in court over the years, that this is a supervisory unit. But the parties, when Sunrise adopted the bargaining agreement, so Sunrise just came in and adopted it. They did not negotiate with the union. As far as I can tell, they did not even talk to the union. They adopted there's a part of the record that says their contract with Horizon is they just adopt all of Horizon's obligations. They come in and they take it. But there's no negotiation about who's in and who's out of the unit. They have this 1981 agreement that says this unit will be supervisory. This is all made up nonsense. Let me tell you why. And this is what blew me away. The ALJ didn't try that case. And then the board's blaming the ALJ. The ALJ did exactly what the ALJ. If the company had that case to present, would they forget? And then the board made it up. The company did not argue that before the ALJ. The fight was over. Well, in fact, everyone's a supervisor. OK, that's the issue. I'm going to take it on because everyone understood if they're not all supervisors, this unit has to be recognized. Everyone went to the ALJ with that understanding. The employer never raised the issues that the board then picked up on. That's blatantly unfair. One thing. If I may, that's that particular issue. The. At the during the hearing, the company's counsel did ask, were you ever certified by the board? Doesn't matter. Well, in my mind, it does. I'll get in your mind. I'll get to there. OK, go ahead. Or were you ever recognized as the nine day rep meeting? Are there employees in this unit? The answer was no. We didn't ask for those things because they don't need to, which is fine. Right. Those hearing briefs were arguing Union Plaza, that this is a mixed unit. The ALJ finds this is a mixed unit. And Sunrise has a bargaining obligation. The board, which she actually says is the board is jurisdiction because this is a mixed unit. They're both. OK, now an exception to the board. Now we are squarely once the ALJ makes that finding. This is mixed. You're squarely in the mixed unit case. And Sunrise and its exceptions to the board says, wait a minute, you don't have jurisdiction because still these are, in fact, supervisors. But also the mutual intent of both parties. Was that this is a supervisory unit as expressed in the collective bargaining? They cite cases where the union has asserted to the board and the courts that this is a supervisory unit over the years. Why wouldn't that have been an issue before the ALJ, if that's what Sunrise thought was really going on? The mutual intent of the parties that would have been litigated before the ALJ. That's where those things work. If that's really their theory of the case, this is made up after the fact. The parties litigated one point, supervisor or not, everything else is within the jurisdiction. And their argument, the whole argument before the ALJ, before the trial going to the board was, are all of these people supervisors? And Sunrise felt we rise or fall on that. That was the case. And the ALJ credibly found the company was wrong and the board did not reverse that finding. The board did not reach that finding. Did not reverse, but it also did not review. That's exactly right. Didn't reverse it or review it. Just ignored it and said, no, we just want to see what we want to tell you, what we think the company was thinking. That's not the way any board has no support for this approach whatsoever. None. So the factors that it relied on that I mentioned to you, and the board doesn't see this as an affirmative defense that Sunrise raised. It sees the board in the board's decision. The board is saying the ALJ should have asked this extra question. And the parties were discussing mixed unit cases and Union Plaza. But that's what's confusing, because the board's approach typically has been, first, is this in fact a mixed unit? And the ALJ found that it is. And that was in the plan and the exceptions. These are supervisory. But and then one might imagine that there would be a defense. Look, I really didn't engage in this voluntarily because reasonably I had no reason to think, you know, the description in the collective bargaining agreement and whatever. But to say that at the at the beginning, without even inquiring into the facts on the ground, that this paper reference in a probably different context to supervisors is enough to terminate jurisdiction. That is not with the board. Now, the ordering of the inquiry. Well, I will certainly say that I can't find any other. In this particular, you certainly can't. I appreciate your patience, your indulgence with this attack. It's part of the bench. It's not personal. I knew you would be right. I'm sorry. I was just going to ask about the the text of the agreement, which is really the board leads very heavily on. And wouldn't it have to. Have some relationship to the statutory supervisory issue in order to be to to vitiate the employers. Understanding that this is a next unit text of the collective bargaining. Yeah, not necessarily. In our representation proceedings, parties can agree that employees are in units. They can say we're going to put this accounting manager in and that person may or may not be a supervisor and they may argue about it later. But they can decide who's going to be in and who's going to be out. And they do not, in their contract, say we are putting to eleven supervisors in or none of these people. They can make an agreement, but to exclude them on the ground that they're not under board jurisdiction, they would have to be indicted that these are people who are not under board jurisdiction, whereas probably the way the term supervision is used is supervision of a ship part, not of human beings with discretion and responsible hiring and firing and discipline functions. It has nothing to do with humans. In fact, it's possible that in supervising hull maintenance and cargo gear maintenance and the like, that there are no no subordinate humans involved. And I will say that that may in fact be true. I mean, I can go through the record and give you examples where they are, but that doesn't to the board. It doesn't matter. Right. The board may know the board may have findings. They just told us their understanding. It's absurd. So my arguing that they might maybe are is outside of. My board, this is. Thank you. Thank you, Miss Cooper. Good morning, your honors. My name is Kara Cooper and I am counsel for the intervener sunrise in this matter. And I just wanted to talk briefly about the record in this case, because we believe that there is adequate record upon which to conclude that sunrise voluntarily recognized a purely supervisory unit. So first, what we've talked about so far today is sunrise offered the CBA, the 1981 CBA, the unfair labor practice hearing. And we think that this is the best indicator of what sunrise was thinking when it assumed the bargaining unit, the bargaining agreement in 2015. Why didn't you present that case to the ALJ? To the ALJ? Yeah. Well, we did talk about we did introduce the CBA. The theory that the board announced was not presented to the ALJ. The board went off on its own with a theory you're comfortable with now. That was not the case tried before the ALJ. I believe in our, and I know you don't agree with this, but in our affirmative defense that we believe that these are all supervisors and therefore the board doesn't have jurisdiction. So you're not defending the board decision because that's not the basis of the board decision. The board did not hold that they're all supervisors. Right. Yeah. So we have a different position in that we believe that they are all supervisors and that our affirmative defense, when we said that they're all supervisors, we said affirmative defense is we believe them to be supervisors. Therefore, we did plead an affirmative defense. But I understand that's not the board. So you think the ALJ had the theory before that what the employer believed is dispositive and she had to decide that and failed to consider what you were raising? The ALJ was not considering what you're now arguing. You're kind of going in between the ALJ and the board, leaning toward the board, but certainly not the case that was presented. Everyone understands that what we're arguing about now is not what the ALJ had before. Did you think that there obviously was this discussion of mixed units and whether we had recognized a supervisory unit or a mixed unit? Right. And it mattered. The ALJ thought it mattered. In fact, what are the people doing in this unit? Because that answers the company's question, either favorably or unfavorably. If I find there are employees in the unit, then the company loses. That's the ALJ's case. You're shifting it now artfully. The board brutalizes it. But it's a different case. I don't have to go any further to be very honest with you. In my mind as a judge looking at an administrative proceeding, in all the years I've done this, that can't happen. But no other reason than it's not fair. You can't try cases like that. And, Your Honor, as you know, the board faulted the ALJ for not doing the initial analysis as to whether Sunrise voluntarily accepted a unit of supervisors, whether they had knowledge to that. So to answer your past question about the mixed unit and why the ALJ didn't rule on that, that is what the board spoke to. So you're arguing that you did argue before the ALJ that your client didn't voluntarily recognize the mixed unit because it had no understanding that it was a mixed unit, apart from whatever the realities on the ground are. It had no understanding that it was a mixed unit. That's correct. You made that argument before the ALJ. I believe we did. Do you have a citation in the record for that? Because that would be key to some of the questions about preservation, waiver, estoppel. No, it was just based on our affirmative defense. So you characterized it as affirmative defense, and that is more the conventional understanding that I have, is that if there were a basis for the employer to say, I had no reason to think there were any supervisors in this unit, that it would be an affirmative defense on the merits, not something that would deprive the board of jurisdiction. Is that also your understanding? I think it can be both. I think it can be affirmative. The way that the ALJ was thinking affirmative defense was that that would merit, because whether the LDOs were supervisor or licensed officers or supervisors or not. But I would say the affirmative defense also can be looked at as affirmative defense. If you look at the board's decision in saying that Sunrise's belief as to supervisor status of LDOs is the initial. Thank you. Why don't you take one minute? Yes. I'll try to do it even shorter than that. I just want to make one point, which is that the union at the hearing didn't take the position that it was a mixed unit. We took the position that none of the licensed tech officers were supervisors. And, in fact, we put in evidence that the captains and the chief mates were statutory employees. And so then when we get the board decision that says we have this understanding that they're all supervisors, when, in fact, we litigated that all of them were statutory employees, was a complete about-face. Never was it argued what MMP understood. In fact, our whole argument was that they are, in fact, employees. And never was it argued what the employer understood in 1981 when the contract was negotiated, in 2015 when it was assumed, or in 2018 when we went back to the table and this issue did not come up. So I agree 100 percent that it's a fundamentally unfair decision. When I read it, I said, what case is this? Because having litigated the ALJ decision, I didn't know how you could even come up with the decision that the board did. It wasn't the same trial I was at. It's not supported by the record. I was just very glad that there is court review. Ms. Ziminovich, what about the JA-12 and the board's decision of footnote 8? The board says respondent recognized. I'm sorry, I'm reading the wrong footnote. The older cases, it's earlier. The older cases that the board relies on, it is, I'm sorry, JA-4, note 7. Numerous federal courts have either found union-represented LDOs to be supervisors or treated them as such, and it cites several admittedly older cases in which the union affirmatively so asserted that they were statutory supervisors. How do we work with those? Sure. So that wasn't something that came up through testimony at the hearing. It was something argued in the brief, and we did know of the existence of those cases and anticipated them. And what we argued in response is, first off, the 1975 decision where MMP, you know, took a position on supervisory status predates the 81 agreement. It's not even clear that it's an offshore unit that that applied to. But also that since then, technology has changed, the way that supervisory status is reviewed has changed, and that maritime law has changed and the composition of the cruise has changed. So we litigated that, in fact, times have changed so that you can't, and case law has changed, should be ruled on for these workers today. I should have asked the board, but where you have a unit that the ALJ has determined is, in fact, mixed, in other words, there are some employees, some non-supervisors in the unit, do those employees continue with representation or everybody loses it? They can enforce a mixed unit, so everybody would continue to have representation. But I'm saying under the board's ruling, for the board to, you know, rematch the ALJ, get substantiation, if we don't reverse the board's ruling, does everybody lose? Yes. Why wouldn't the employees, who nobody disputes, because they're understood by the employer, to be supervisors? The board's saying it has no jurisdiction, it's saying it's not a viable unit. So the board is effectively saying, so the employer can walk away from it. Right, so we can't get the information that we were entitled to under law, we can't go to arbitration. So if those employees wanted to organize and leave out the people who the employer understood to be supervisors, they would have to start a new unit. It's not clear. I mean, the board just says, oh, just go file something else. And you saw with the motion for reconsideration, two of the three said it was wrongly decided. It said just start anew, go back to the board and file something for, yes. So it's not exactly clear how you would play that out. What's clear is the board said the employer can lawfully walk away from this. Obligations that would otherwise be enforced under the NLRA, the board says, will not be enforced for anyone, the employees or the supervisor. Even for statutory employees. So we're starting there. That's all the board tells us, which is unprecedented. Right. Thank you.
judges: Henderson, Pillard, Edwards